The next matter is number 21-1899, Mack S. Hudson v. Sheila Kelly. At this time, I'd ask the counsel for the appellant to please introduce himself on the record, if he can. Good morning. May it please the Court, my name is Alan Campbell and it's my privilege to represent Mack Hudson in this case. If possible, I'd like to reserve two minutes for rebuttal, please. Mr. Hudson is here asking this Court to reverse the district court and grant him a writ of habeas corpus. We've raised three issues in the brief, and I'd like to start on the second one, and that's the due process violation regarding jury selection. So I think this is actually a simpler issue than the courts have been making it out, but they've missed it. Under Ross, you have a due process violation when a defendant does not get what state law provides him. In Massachusetts, when you're facing second-degree murder charges, you get 12 remtree charges, plus one for each juror seated, which would have entitled him to 16 at the start of jury selection process and 15 by the end of it. However, he only got 11, and that's because the judge changed the rules midstream and decided to stop with the 15 jurors rather than the 16. Counsel objected below and went on the record saying, I would have used my peremptory challenges differently had I known in advance that we were going to be stopping at 15. It's very clear-cut. Massachusetts law provides him with at least 15 peremptories. He was only able to use 11. What do we do about the Mack's conclusion, if I'm reading it right, that under Campbell, you're only deprived of your peremptories that you're entitled to if you can show prejudice, and that he failed to show prejudice here? Well, under Swain, I believe it is, Swain, Lewis, and Harrison, it's either honored or they're not honored, so you don't have to show prejudice. What do we do? Are you saying then the Mack misapplied Massachusetts law? I'm sorry. Massachusetts said that he would only, if he showed prejudice, but the state law doesn't trump the federal law. Under state law. But for the Ross claim, to get the Ross claim to work, you have to show a violation of state law, correct? Correct. And the Mack said there was none because there was no prejudice. Massachusetts didn't actually address the issue that we've been presenting all along, in that it was the diminution in the number of peremptories. They focused on the jurors that were sat, which is an entirely different issue. There are numerous issues that one can raise regarding jury selection. They answered one of them. That wasn't the one that we raised. I guess I'm just in the Ross analysis, in the part where you made this due process challenge. Yes. They first cite Campbell in the Mack's opinion. Yes. And then they say Campbell says that in order for this to be a violation of state law, the denial of the peremptory, you'd have to show there was prejudice flowing from it as a matter of state law. Then it says there was none. The state court said you have to show prejudice to get a new trial when there's an issue, which is not the law regarding jury selection. Well, I guess I'm just, are you saying then the Mack misapplied state law? Yes. In the case, the only case that they cited in rejecting this was, I believe it's Baldotti. I can't read my note exactly. And Baldotti is wholly distinguished. Well, Baldotti, I read them to be citing Baldotti for the proposition that to make a due process claim, you have to show a violation of state law plus that it was fundamentally unfair. Well, the interesting thing is. The way I read the Mack is saying there just wasn't a state law violation. Yes, but they're wrong. It's a simple math question. The rule says you get this number of peremptories. He did not get that number of peremptories. But if Massachusetts says that that's only a violation of state law in an instance in which you can show prejudice flowing from it, then what's the problem? But the case that they rely on for that, Baldotti. But I don't understand to be relying for Baldotti for that proposition. They cite Baldotti for the proposition that there's no due process problem unless there's a violation of state law and it would be fundamentally unfair. I don't read them to be citing Baldotti to show there was no prejudice. They just explain why they think there was no prejudice. They're relying on Campbell for the requirement that you have to show prejudice. Am I misreading it? I believe we are reading them differently. I believe that they rely on Baldotti. How do we adjudicate how to read it? Well, the state law doesn't control on the due process part. For Ross purposes it does because you can't get in the door on the due process Ross claim unless you show a violation of state law. Right, but they're intertwined. To say there's no due – the states don't get to decide what due process is. Correct. They get to decide what state law entitles you to. Right. And state law can say you're not entitled to this number of peremptories unless in being denied that number you can show you were prejudiced by the denial. That's a perfectly legitimate thing for state law to say. If it's not, that would be a separate due process challenge, which is state law can't have that prejudice rule, but you don't make that argument. Right, but the only state case dealing with a reduction in the number of peremptory challenges is Baldotti. That's the only case that addresses this – it's not the identical argument, it's a very similar argument. Until the Max decision in this case. Yes, of course that's true. So how do we know that's a violation of state law? Well, again, not to keep repeating Baldotti, but in Baldotti there was no objection at trial. And the court specifically says there's nothing in the record to indicate that the defendant would have used his peremptory challenges differently. In this case, we have a timely objection and we have counsel saying, I object to this. I've been holding five peremptories with the assumption, you know, wisely assuming that the judge is going to go with the same number that he had said they would go with, that there would be one more juror to select. And I've been holding five peremptories to use that. The judge just decides, you know what, this has gone on long enough, one more and we're done, and then we're sitting 15. The judge took five peremptory challenges away from Mr. Hudson. There was a timely objection and expressly on the record the counsel saying, I would have used them differently had I known what the procedure would be. That makes Baldotti essentially irrelevant. As Baldotti was decided on substantial risk of a miscarriage of justice, which, as you know, is a much harsher statute. Let me just back up and ask it this way. Under Massachusetts law, do you have to show prejudice in order to show that there was a violation of the state law right to the number of peremptory state law otherwise gives you? No. So Campbell, their citation to Campbell for the proposition that you do is wrong? I believe that's true. How do we know that? We have the Mac opinion saying this is state law, that you have to show prejudice in order to show that there was a violation of state law by being denied the peremptories. Isn't that what the Mac says? I don't believe it is. I believe that was more of a general, if you had a problem with the jury, you have to show prejudice. Not specifically, we took away your peremptory challenges. Where's the prejudice? Well, unfortunately, under federal law, the denial of, I'm sorry, the peremptory challenges, you don't have to show prejudice. And this goes back to, I think it's the 1700s with Blackstone. The right is either honored or not honored. But as Chief Judge Barron said, federal law looks to state law. They are intertwined. That's certainly true. And on the last ruling from the Mass Appeals Court, there's no prejudice. How do we get around that? Well, the way that I would say you could get around it is that state law entitles him to 15 peremptory challenges, and he did not receive 15 peremptory challenges. But then you have an appeals court, there's no SJC ruling, but you have the president saying there's no prejudice still, there's no due process violation. Well, and that's why I'm saying under Williams v. Taylor, the decision isn't entitled to deference, because they decided it contrary to the cases I've cited. State law didn't entitle him to this unless he's prejudiced. The law says when you're charged with a capital crime, you get 12 peremptory challenges plus one for each additional juror that's sat. That's what the statute says, correct? Yes. And then the Mass Appeals Court says this, but is there any SJC decision that's contrary to the Mass Appeals Court? I don't think so. I don't believe so. And on the question of taking away peremptory challenges, again, Baldotti is in Hudson. Well, that's the difficulty is Hudson. I mean, the difficulty is this particular case, which is that in this case, well, I mean, I take your point. My point is that you don't read the MAC to be saying that there's any basis beyond this being identical to the facts of Baldotti for concluding that there was a denial of the state law right. And since Baldotti is so different, it was unreasonable for them to conclude that. Exactly. And I think perhaps the difference is Judge Helpy's question is going to the remedy for the violation if you don't get what you're entitled to, whereas our argument is he was entitled to it, he didn't get it, and now we're looking to the federal courts for the remedy. But you're asking us, again, the Massachusetts Appeals Court ruling absent a SJC ruling to contrary, it's present. That's the law in Massachusetts. And you're asking us to say that's wrong. It should be different. Well, I don't actually think Massachusetts addressed this issue. Massachusetts looked at it and said, you have a jury, 15 jurors on it. You didn't object to any of those, that's a fine jury. That's what Massachusetts said. Massachusetts didn't say under Massachusetts law you're not entitled to what the statute says. In the absence of a showing of prejudice? I thought that's what the MAC was saying. I don't believe they did because the prejudice, that just looks at the composition of the jury. So essentially they're saying their decision could boil down to you actually have no right to preemptory challenges despite a statute giving you or a rule of criminal procedure giving you that right. And just to refresh my recollection, I know this case has been all around the state system, but following that ruling from the MAC, the SJC was certainly denied, am I correct? Correct. They denied the application for further review on that appeal. And if there aren't any additional questions on that one, I would just touch briefly as my time is drawing short, the due process claim regarding the surprise identification. Under Manson and Neal, we have reliability being the linchpin of admissibility for an identification, and under Neal's the likelihood of misidentification is what violates due process. The government in its brief and the district court below seemed to think that there was no pretrial identification in this case, which in a sense is correct, there wasn't a lineup beforehand, he wasn't shown photos, anything like that. However, at the first trial, Mr. Hudson sat at defense counsel for approximately two weeks. The witness, you know, Brown testified. He saw defendants sitting at counsel table for the entire time he testified. That could be considered the pretrial show-up or the pretrial identification. So then at trial, the second trial, when he identifies him, that was tainted by having seen him at the previous trials, having seen him at the pretrial. Why isn't it like Perry, though, where there was nothing that the government did? It wasn't as if the government said, do you see the person in the courtroom? No, if I could just answer that briefly. The government did not ask the question. That's true. But the government is also charged with preparing their witnesses, and there had been a pretrial ruling actually about 30 seconds after the discussion of switching the jurors to 15 that these witnesses wouldn't be asked to identify anybody. And he wasn't? He wasn't, but it doesn't turn entirely on the government. Why isn't it just like Perry, where if a person just blurts out, I see him there, and they say, well, that's not the government causing that to happen, that just happened? But it still was inadmissible, and as the district court found below, it shouldn't have come in. So the remedy of telling defense counsel to take a tum really didn't address the question. And we're talking about a murder trial. But my time has run out. I'll perhaps be back in 10 minutes. Okay. Thank you. Good morning. May it please the Court. Assistant Attorney General Eva Badgley for the Respondent. Thank you, Your Honor. I'd like to start with the denial of the petition for habeas corpus. The Massachusetts State Court decisions rejecting the petitioner's claims of due process violations were both reasonable and correct. And, Your Honors, I'd like to read to you, if I may, from the Massachusetts Appeals Court decision where they cite to Massachusetts State Court law about the jury decision. But first, I want to point out that we're here on habeas review. And in order to get habeas relief, you have to show that there was a violation of clearly established Supreme Court law. And there is no clearly established Supreme Court law about peremptory challenges. Petitioner is claiming that there is a due process violation. But there is no due process violation. In fact, there was no violation of Massachusetts State law. As the Massachusetts Appeals Court said, general laws chapter 234, section 32, providing that no irregularity in the jury and paneling process shall be sufficient to set aside a verdict unless the objecting party has been injured or subjected before the verdict requires some proof of prejudice, even if the counsel has made a timely objection. And Commonwealth v. Campbell is cited. And so now the petitioner tries to distinguish his case from Valdotti by saying that he objected. But here's the thing. A petitioner is only entitled to 12 jurors. And this petitioner did not object to his 12 jurors. He said, Judge, this is three days of jury impoundment, which this court knows is a long time for a superior court trial. The trial judge says, okay, in the beginning, yes, 16 days. But after three days and they don't have it, he reduces the number. He objects. But he doesn't object when the 12 jurors are sat. This petitioner received what Massachusetts State law provides for. And there is no clearly established Supreme Court law that the petitioner has cited to that deals with peremptory challenges. Let me ask, at any point in the state proceedings, even though we're not citing any U.S. Supreme Court case, did the petitioner at any time say, as a matter of federal law, so this is what the law is in order to, even though the Supreme Court still hasn't ruled on that issue, that didn't happen, correct? That is correct, Your Honor. He relied basically on state law the whole time. He did, Your Honor. But also I just want to make clear that what he said at the time of objection was I was saving my peremptory challenges for the perfect 16th juror, which doesn't make sense because you're only entitled to 12 jurors, so you don't know which of the 16 will be the final 12. Does that make sense? Well, why wouldn't that mean you might want to wait? So what his point is, is that if you tell me, suppose the judge said, just so you know, I'm going to pick 16, you don't know which of the ones are going to be the 12 in the box, so you might want to wait on using your peremptories because that 16th one could be the killer. Right. So he says, gee, thanks, Judge, that was nice to know that. So he's waiting. Then the judge says, I'm tired of this. We're stopping at 12. Then he says, well, I was waiting because you told me it would be wise to wait. They said, oh, don't worry about it. That doesn't seem very fair, does it? That is correct, Your Honor. That does not seem very fair. Okay, so that's essentially what the petitioner is saying happened to him here. But that is not what happened to the petitioner here. Well, first of all, this petitioner received everything that Massachusetts state law provides for. That would be true in my case. No, I don't think it would, Your Honor, because I got all 12, and that's all I was entitled to. But, Your Honor, what happened here is the judge did warn this petitioner beforehand, and they questioned three other juries, and after three days. What was the warning? I don't remember exactly verbatim what he said, but let's see what the Massachusetts appeals court said. Following several successful attempts to sit a 16th juror, the judge informed the parties that he would end jury selection at 1 o'clock, and if only 15 jurors had been seated, he would proceed with that number. Several more potential jurors were questioned, all of whom were excused, and the selection process was terminated. And by that point, how many had been picked? By that point, Your Honor, 15 jurors had been picked. Yeah, so it's a little late to have given that warning. Yes, Your Honor, but he still did receive what he was entitled to under state law, because 12 jurors sat. And there's no evidence that he was precluding from exercising any of his peremptory challenges during the impoundment process. But let me say this. I picked probably more than 100 jurors in my career before coming to this court, and until you have, again, the federal court's a little different, but let's say I was going to have 16, and then the peremptories are always after you have the 16 or 15 or whatever. If that's what counsel is expecting, and again, he might decide, I'm going to do it this way or that way, or maybe with that 16th juror, the composition of the jury would have been different. And from a defense perspective, of course you're shooting for unanimous, not guilty, but best case scenario, worst case scenario, you're shooting at least as long as you get one reasonable doubt. That's all you have to do. And again, doesn't that affect not having that 16th juror? There's a possibility that that could affect that eventually. Your Honor, I'm just going to remind you that we're here on habeas review, not direct review. And there is no clearly established Supreme Court law that says that the petitioner has to have that many peremptory challenges. The law that the petitioner is citing on is about a due process violation. It's predicated on whether there was a denial initially of a state law entitlement. That is correct. So before we get to that, we're just trying to figure out, was there a denial of a state law entitlement? There was not, Your Honor. I understand you say there was not. That is correct, Your Honor. And is that because as you read it, they're saying in order to show that you were denied it, it's not enough to show you didn't get all you expected. You have to show you were prejudiced by not getting that. That is correct, Your Honor. The reason why the MAC concluded that there was no prejudice is the petitioner received 12 jurors and he did not object to those jurors. And also, here there is no evidence that Hudson was precluded from exercising his peremptory challenges during the impanelment process or that he was forced to accept a juror who would have been excluded from the panel. So that is the basis. And that last sentence, what does that mean? When the judge said, okay, that's it, we're not giving you the actress, how many peremptories did he have left at that point? I believe he had five peremptories left, Your Honor, if I'm not mistaken. That he had not used? That he still could use? What did he have left to use at that point? I believe he had five left, Your Honor. Of the 12 that the judge was now saying you can have, how many of those 12 were left? Just one? By the third day of jury selection, 15 jurors had been seated and Hudson had five peremptory challenges left. Yeah, but the judge was, so he could have used all five on the 12 that were seated even then? No, no, 12 jurors had been seated. So you were going to get 16 jurors and you were going to get 16 peremptory challenges.  Practically speaking, at the point the judge said, I'm sick of this, of the seated jurors, could Hudson have done anything to remove any of them? I don't think so at that point, Your Honor. Right, okay, so he's out of luck. And had he known that the judge was going to change his approach, might have he used a peremptory on one of them? I don't know that, Your Honor. Did he represent that he would have? No, he did not. Okay, so that would be a reason to think there was no prejudice. That is correct, Your Honor. Okay, and is that how you read the Mac's conclusion, the basis for its conclusion that there was no prejudice? Your Honor, I don't know. By virtue of that last phrase, which is that he hasn't shown that he was forced to accept any juror, he would not have seated. That is correct, Your Honor. That is how I read it, for showing no prejudice. And let me ask you, if we were to believe or understand the Mac's decision is totally wrong under Massachusetts law, as a federal court in habeas, we can't disturb it. We have to respect that, correct? Well, Rick, Massachusetts state law. We would have decided differently, but we're not a Massachusetts appeals court. Correct. Errors of Massachusetts state law do not form the basis for habeas relief. That is correct, Your Honor. I thought that under Ross, it can. If there's a due process violation. Yeah, and the due process violation is because you were denied an entitlement under state law. Correct. And one way you could be denied it is by a court disregarding the state law rules about what you were entitled to. But that did not happen here, Your Honor. The Massachusetts appeals court followed Massachusetts state law. And that's because of your reading that Campbell requires a prejudice showing that wasn't made here. That is correct, Your Honor. Well, what if we understand that that ruling violates federal due process? Isn't there a remedy? No, Your Honor, because we're here on habeas review, and there is no clearly established Supreme Court law that would entitle... So his door is only through Ross, which he can get through if he can show there was a violation of state law. Correct. But you're saying he can't. Now, suppose we thought even though state law says what you say, it says that Mack said that. Suppose we thought that was such an unreasonable application of state law as it stood at the time that it is an egregious violation of state law what happened here. Then he might have a Ross claim, right? I don't think so, Your Honor, because I don't think he can show prejudice. So I don't think that he would have a Ross claim. Well, suppose state law didn't require showing a prejudice. And then all of a sudden the Mack out of the blue now says it's required. Would there then be a potential basis? That could be a potential Ross claim. Correct, Your Honor. Even if we totally disagree with the Massachusetts Appeals Court, we would have to affirm and it would be up to the petitioner to go to the Supreme Court and maybe they'll think differently. But it would have to be the Supreme Court, not us, correct? Honestly, even the Supreme Court under the habeas statute couldn't grant relief. So I think that the district court properly denied habeas relief. And, Your Honor, if I may just go on to the identification by the witness at the second trial. There is no clearly established Supreme Court law that talks about in-court identifications. And as was discussed earlier, the prosecutor actually told defense counsel that they were not asking this witness to identify the petitioner. And the question was asked if he saw the shooter and the witness said it's those two. There were two defendants sitting at counsel table. And for that reason, the cases that petitioner cites do not have to do with that kind of in-court identification. They're clearly distinguishable. And I want to point out one thing that the petitioner fails to note. And that even though the defense counsel asked for a mistrial, he never asked to strike the testimony of the witness in this court to affirm the denial of. Just one point. I thought the SJC now had in place a rule against in-court witness identification. Your Honor, the times have changed dramatically. So this crime was committed in 1989. The first trial was held in 1990. The petitioner's convictions were overturned. The second trial was in 1997. But as you know for habeas review, the law about in-court identification has changed dramatically. Is it the case in the current SJC's view this in-court identification would have had to have been stricken? I'm not exactly sure the exact, if it would have been stricken. But I would cite the court to cases like Likely that say that the way that habeas cases are decided is at the case law at the time. And I am very cognizant of the fact that ideas and rules about in-court identifications have changed over time. But I want to put the court into the time of where the trial was. And as the mass SJC said that that changed the rule, that's not retroactive? Well, Your Honor, I don't believe that rule is retroactive. And counsel is not arguing that right now. The retroactive rule should be applied. And we're here on habeas review. But I do want to point out that ideas have changed a lot about in-court identification over time and the suggestiveness of it. But again, we're here on habeas review and it has to be about clearly established Supreme Court law at the time. And there is none. And for that reason, habeas relief should be denied. Thank you. Thank you, counsel. At this time, counsel for the appellant will return to the podium and introduce himself back on the record. He has a two-minute rebuttal. Counsel, I'll give you time to make your points if the Chief Judge agrees. But I need some confusion cleared up. I thought I understood the record. Now I'm thinking I do not understand the record. There were 15 jurors selected. A jury had not been impaneled. Twelve had not been impaneled, but 15 had been selected. Is that correct? Fifteen jurors had been sat, but they had not been sworn. If that clears the confusion up. And so the final 12 had not been identified. Yeah, in Massachusetts, the final 12 aren't decided until the moment before they go off to argue. So the five peremptories that still existed at the point in time when it was cut off are all about the 16th juror. Correct. So statistically, the strategy is I want this one 16th chance to get the right juror to be selected among the 12. Is that what's going on? Your math isn't correct, but yes, there's actually a 75% chance that the 16th juror would have sat on the deliberating jury. Got it. Okay. And perhaps I should have thought of this differently. When counsel makes his argument saying I would have used them differently, I've been saving them, I would have used them differently. Implicit in that is that he would have struck somebody that was on the jury already. Because what else are you going to do? I would have used them differently. Doesn't mean I would have saved more if I had known you were going to cut them off. But I just take the SJC to be saying in order to show prejudice, you have to make more of a showing than that. You got to identify which was the juror that would. Now, you might say that's ridiculous to put them to the test. The whole point of a peremptory is I don't have to identify the person who had cause about or whatever. I get that. I'm just saying I read the Mac. That seems to be what they're saying, that you have to make more of a showing of prejudice than was made here. Well, we have him saying I would have used them differently, which in this context could only have meant that somebody that's on that jury, I would have struck if I had known that we were sitting. I guess one way of thinking about it, you tell me if you think this is right for the rock. The Ross type of challenge is kind of a nested challenge because it's got a predicate of there being a state law violation first. Correct. So it must be the case that a Ross claim can get going even when a state court says you didn't lose anything you were entitled to. If the state court in doing that is violating its own state law. Correct. I believe so. Yes. Yes. A difficulty is OK. Well, how do we know that it was really violating state law rather than just interpreting it in a case in which there was no state law? In which there was some ambiguity like courts do all the time. So there's that threshold question. But then we're on habeas. So it would seem to me that you'd have to have a pretty strong showing that the state court was violating its own law on habeas to establish the predicate for a Ross claim. Right. Well, I guess what I'm struggling here is even if you make some points that, yeah, I would have done the Mac differently, maybe it was wrong. Could you say no reasonable jurist could have construed mass law the way the Mac applied it here? If you can't, then exactly how do we say there's a Ross problem? You can say that. And because, you know, having done appellate law for a while, there are always two things you have. Is there an error? And then what's the remedy? To say that you have to show prejudice to establish you didn't get what's under state law is actually missing the point. The error is what in Massachusetts law says you're right in thinking that the entitlement precedes the prejudice showing rather than like with a Strickland claim. The prejudice showing is embedded in whether there was a violation of the denial of the entitlement. I don't know what specifically I could point to in state. So that doesn't that raises the difficulty for me, which is then how do I know it was that unreasonable a construction of state law that it could serve as the predicate on habeas for a Ross claim? Well, because the rules of criminal procedure don't say you get this number of peremptories unless giving you a smaller number doesn't prejudice you. It says you get this number of peremptories. And at the moment, the judge said, I'm doing we're doing one more and then I'm done. And I don't want to be flippant. The judge was exasperated. I think he just said we're doing one more and then we're done. There was no opportunity to use those five remaining peremptory challenges. They were taken from him. Even if you go to the number of 12, he was only able to use 11 peremptories. Because once he had made that announcement, there was no jurors that made it to the point where counsel could have issued a peremptory. They were I believe they were all struck for cause or by other other parties. Just two very brief points to answer. Judge help his question. Counsel made essentially the same argument of relying on Ross to the Massachusetts Appeals Court. So I think you would ask, had it been raised and it was specifically raised almost in the exact same terms. And then just super briefly on the misidentification. The even though the cases again, Neal and Manson typically deal with a pretrial identification. If you look at it more broadly, the law says suggestive introduction of a suggestive ID is a due process violation. And that's that's what we're arguing here. And the final point, my sister says he didn't move to strike after he moved for the mistrials. The judge said, there's nothing I can do. Take it, Tom. There's nothing to add at that point. He had already done everything he could. And unless there are any other further questions, I will rest on my brief.